(No. 30262.

CLARENCE JOHN ARNDT, Appellant, *vs.* MARGARET HAAS ARNDT, Appellee.

*Opinion filed March 18, 1948.*

AIKEN, McCURRY, BENNETT & CLEARY, (CHARLES R. AIKEN, of counsel,) both of Chicago, for appellant.

ARTHUR GOLDBLATT, and EDWARD GOLDBLATT, both of Chicago, for appellee.

Per CURIAM: The plaintiff, Clarence John Arndt, appealed to the Appellate Court, First District, from a decree of the superior court of Cook County, dismissing his complaint for annulment of his marriage to the defendant and, after this appeal was perfected, he also appealed from a subsequent order of the superior court directing the payment of $150 to the defendant for attorneys' fees and expenses in defending the first appeal. The appeals were consolidated in the Appellate Court and that court by its opinion dismissed the appeal from the decree dismissing his complaint for annulment and affirmed the order directing the payment of attorneys' fees and expense money in defending the appeal. The case is in this court as a result of our granting leave to appeal from the Appellate Court.

On September 13, 1944, the plaintiff, Clarence John Arndt, filed his complaint in the superior court of Cook County, seeking the annulment of his marriage to Margaret Haas Arndt, on the grounds that the marriage had been induced by duress and by fraudulent representation that the plaintiff was the father of the child with which the defendant was pregnant. The defendant answered denying the charge of duress and fraud and affirming that the

plaintiff was the father of her child. She also filed a counterclaim for separate maintenance or, in the alternative, for divorce on the ground that from and after the marriage ceremony, the plaintiff had without cause refused to live and cohabit with her. After a full trial, the court entered a decree on January 9, 1946, finding that the plaintiff was the father of the defendant's child and dismissing both the complaint and the counterclaim for want of equity. No appeal was taken from that decree, but within 30 days the plaintiff filed a petition which, as amended, alleged that the finding in the decree as to the paternity of the child was based on testimony on behalf of the defendant that the plaintiff was in the city of Chicago during the period from June 13 to and including June 20, 1943, but that, in fact, during all of that time, the plaintiff was in the State of Mississippi as a member of the U. S. Army and that certain witnesses named in the petition would so testify. This petition also alleged that at the hearing the court had ruled that the paternity of the child was immaterial and, therefore, no finding on that question should have been made. No other objection to the decree was raised by the petition and it ended with the following prayer: "Wherefore, your petitioner prays that the decree heretofore rendered and entered in this cause, on January 9, 1946, may be vacated and set aside in order that the newly discovered evidence hereinbefore set forth may be introduced in this cause, * * * or, in the alternative, that a new decree may be entered in this cause expressly refraining from adjudicating any question as to the paternity of the defendant's child."

On April 3, 1946, the court vacated this decree and entered a second decree identical with the first, except that the paragraph containing the finding that the plaintiff was the father of the defendant's child was omitted and, in lieu thereof, there was inserted in the second decree a

paragraph stating the contention of the respective parties as to the paternity of the child and concluding: "This court does not make any finding with respect to the paternity of said child." From this decree, the plaintiff appealed to the Appellate Court, First District, and, after notice of appeal had been filed, the defendant petitioned the chancellor to enter an order requiring the plaintiff to provide the defendant with money to meet the expense of the appeal. Such an order was entered and thereafter the plaintiff appealed to the Appellate Court from this order granting to the defendant attorneys' fees and expenses in defending the appeal.

No report of proceedings showing the testimony at the original hearing has been filed by either party. The plaintiff contends that his appeal from the second decree dismissing his complaint for annulment of the marriage on the grounds of want of equity should not have been dismissed by the Appellate Court. He contends that the action of the chancellor in dismissing his complaint was based upon an erroneous ruling that the question of the paternity of the child was immaterial and was not such a misrepresentation as would entitle him to an annulment. He further contends that the trial court erred in awarding attorneys' fees to the defendant to defend the appeal after the appeal had been perfected, because the trial court was without jurisdiction to award such fees after the appeal had been perfected and for the further reason that there is no statute which authorizes a court to award solicitors' fees and expense money in marital proceedings, except in cases of divorce and separate maintenance.

The action of the Appellate Court in dismissing the appeal from the second decree entered by the chancellor is based upon the theory that the plaintiff obtained by that decree exactly the relief and all the relief he asked for in the alternative prayer of his petition to vacate the original

decree. The court stated that under such circumstances plaintiff could not appeal from the second decree and that his appeal should therefore be dismissed. Parties of record may appeal as a matter of right if they deem themselves aggrieved by the decree and the question as to whether they are actually so aggrieved has no bearing upon their right to appeal. Particularly is this so where they have brought the suit originally and were awarded no part of the relief which they asked for in their complaint.

In the case of *Harrison* v. *Kamp*, 395 Ill. 11, it was contended that the appeal should be dismissed because the appellants obtained the same relief in the decree appealed from as they would have obtained in a new decree and it was said that they should not be permitted to appeal because there was no showing of injury to them by the decree appealed from. In that case we said, at page 18: "The seven appellants were all parties of record and could, as a matter of right, prosecute an appeal if they deemed themselves aggrieved by the decree. Whether they were actually so aggrieved has no bearing upon their right to appeal."

Likewise, in the case of *Gray* v. *Jones*, 178 Ill. 169, and *Williams* v. *Breitung*, 216 Ill. 299, this court has held that where the judgment or decree, although in favor of the party appealing therefrom does not afford to said party the relief claimed or where he may sustain injury thereby, he may seek a reversal.

The Appellate Court erred in dismissing the appeal from the second decree and should have considered the case on its merits in the appeal from that decree.

The next matter to be considered is the question of the correctness of the order entered by the chancellor after the appeal from the decree had been perfected, by which order the defendant was granted suit money to defend the appeal. The plaintiff contends that upon his perfecting

the appeal the trial court lost jurisdiction of the cause and was therefore powerless to enter any order providing for suit money to the defendant to defend the appeal. The defendant contends that the chancellor could, in the exercise of his general equity powers, make such an order even after the appeal had been perfected, since that order did not concern any matter in controversy from which the appeal had been perfected. The Appellate Court by a divided opinion has sustained the action of the chancellor in granting the defendant suit money to defend the appeal.

A careful review of the cases cited by the respective parties, together with an independent search of the authorities in this State, indicates that this exact question in an annulment suit has not heretofore been brought to the attention of this court.

There is no statute with reference to the annulment of marriages and the procedure to be followed by trial courts in their determination of such questions. We have previously held that courts of equity have no inherent powers in cases of divorce and that the jurisdiction of courts of equity to determine divorce cases and all matters relating thereto is conferred only by statute and we have stated that courts may exercise their powers in divorce matters within the limits of the jurisdiction conferred by the statute and that the jurisdiction depends solely upon the grant of the statute and not upon general equity powers. *Smith* v. *Smith*, 334 Ill. 370; *Smith* v. *Johnson*, 321 Ill. 134.

A court of equity has no general power, in the absence of statute, to compel the support of a wife, this being the husband's common-law obligation. The legislature, in enacting divorce and separate maintenance statutes, provided for such support, but the common-law duty to support is still preserved and the wife can still obtain her remedy at law for the failure of her husband to support her.

The Appellate Courts of this State have repeatedly held that the only power to allow solicitors' fees to defend an appeal involving a matrimonial situation is by virtue of section 15 of the Divorce Act. (*Jacobs* v. *Jacobs*, 328 Ill. App. 133; *Shaffer* v. *Shaffer*, 219 Ill. App. 200; *Balswik* v. *Balswik*, 179 Ill. App. 118.) An annulment proceeding differs from a divorce case in that the latter is instituted to sever a marriage relation admitted to exist. In an annulment proceeding the suit is for the purpose of declaring judicially the marriage never to have taken place between the parties. If the parties are married the law places upon the husband certain obligations of support and maintenance, and in case of a divorce proceeding between them the statute authorizes the court to require the husband to pay legal expenses or support money as required by his order. In case there is no marriage between the parties there is no matrimonial obligation, but of course no requirement to pay support to the putative spouse, and, as pointed out above, no duty to pay support money or attorney fees unless so provided by statute. This is true, since equity has no inherent power to order the payment of such fees without statutory authority. There is no statute in this State requiring the payment of legal fees or suit money in cases of annulment and it would appear that the order of the court in the present case in ordering such payments was without authority.

A good part of the discussion in the brief centers around the claim that the order was made after the superior court had lost jurisdiction by the serving of the notice of appeal. Since we have held that the superior court had no authority to enter the order for the payment of fees it is unnecessary to discuss this question because the order was invalid in the first instance. The question whether it could have been entered after the notice of appeal becomes immaterial. In either event, the action of the Appellate Court in affirming the order thus made was error.

For the reasons stated in this opinion, the judgment of the Appellate Court in its docket No. 43796 is reversed and the cause remanded to the Appellate Court, with directions to consider the merits of that appeal. The judgment of the Appellate Court in its docket No. 43831 affirming the order of the superior court of Cook County is reversed and the cause remanded with directions to set aside the order allowing appellee suit money.

*Reversed and remanded, with directions.*