Leslie Lee **GOODMAN**, Appellant,

v.

Patricia **GOODMAN** (Now Dalton), Appellee.

Court of Appeals of Kentucky.

Aug. 30, 1985.

Phillip R. Warf, Elizabethtown, for appellant.

Barry Birdwhistell, Elizabethtown, for appellee.

Before CLAYTON, DUNN and McDONALD, JJ.

CLAYTON, Judge.

Patricia Goodman and Leslie Goodman were divorced on March 6, 1968, by an order and judgment of the Hardin Circuit Court finalizing an earlier interlocutory decree of January 5, 1968. Under the terms of that earlier decree, Patricia was awarded care and custody of the couple's sole child, Scottie, and $75 per month for child support. Fourteen years later, on September 14, 1982, Patricia filed a notice and motion with the same court moving the court to hold Leslie in contempt for his failure to pay $14,390 in child support arrearages, $67 in court costs, and $200 in attorney's fees, all of which arose out of the original dissolution action in 1968. A judgment was entered October 15, 1982, holding Leslie to be in contempt and ordering his arrest. On November 3, 1982, Leslie was ordered conditionally released from the Hardin County Jail pursuant to an agreed order by the court incorporating an agreement between the parties. By that agreement, he was to pay $417.95, the costs and fee awarded in the original action, and $35.00 per week from November 1, 1982, until the judgment of $14,390 plus 8% interest per annum had been paid.

Subsequent motions for contempt for failure to make timely payments were filed by Patricia on April 4, 1983, May 16, 1983, June 8, 1983, July 14, 1983, August 8, 1983, October 17, 1983, January 24, 1984, May 22, 1984, July 5, 1984, and November 23, 1984. Leslie's usual response to these repeated motions was to make payment of the arrearages demanded prior to hearing on the motion. However, after making a final payment in December of 1984, Leslie, by counsel, challenged the jurisdiction of the trial court to enforce its November 3, 1982, order by further contempt proceedings. His argument in this respect is that the trial court may no longer rely upon contempt proceedings to enforce payment of arrearages in child support as Scottie has reached his majority. The arrearages sought are, in Leslie's view, the equivalent of an ordinary judgment debt for which he may not be imprisoned under Section 18 of the Kentucky Constitution. As support for this position he cites *Fox v. Fox*, 56 Ill. App.3d 446, 14 Ill.Dec. 201, 371 N.E.2d 1254 (1978) (cited in *Harvey v. McGuire*, Ky.App., 635 S.W.2d 8 (1982), addressing the issue of real party in interest in a proceeding by a divorced mother to recover delinquent child support payments where her child had reached its majority).

The trial court was unpersuaded, however, and after citing the terms of the 1982 agreement, refused to accept Leslie's argument, instead ordering him arrested. Apparently the trial judge reasoned that given the terms of the agreement and agreed order (entered during the child's minority), the delinquent payments were "not payments of child support arrearages per se."

On February 19, 1985, Leslie moved the trial court for a stay of the above order, entered 6 days earlier, and tendered to the court a proposed supersedeas bond of $3,400. The trial court, in response, entered amended findings of fact, conclusions of law and order on February 26, 1985. In this second order, the court, in deciding whether an award of attorney's fees and supersedeas bond were warranted, noted that the former wife was the real party in interest, *Harvey v. McGuire*, Ky.App., 635 S.W.2d 8 (1982), and added that "were it not for the nature of the agreement [Nov. 3, 1982 agreement] between these parties, this would be no more than a common law judgment enforceable by ordinary means."

The trial court then permitted the appellant to supersede the order and denied respondent's motion for costs and attorney's fees.

The question we are asked to decide is whether Leslie may be repeatedly incarcerated pursuant to the trial court's contempt powers for his failure to honor the terms of an agreed order regarding delinquent child support payments for a child which is no longer in its minority.

As the parties point out, no reported Kentucky judicial opinions have yet had occasion to address this exact issue. At best, our review of current case law reveals that Patricia Goodman would be considered to be the real party in interest in an action to collect delinquent child support payments following the child's majority. *Harvey v. McGuire*, Ky.App., 635 S.W.2d 8 (1982). *Harvey, supra,* however, does not address the issue of contempt as a means of judicially enforcing a judgment for delinquent support owed the custodial parent of an emancipated child. Its sole relevance in this regard is a passing reference to *Fox, supra. Id.* at 9.

Were Patricia seeking to use contempt proceedings as a means to enforce child support payments during her child's minority, there would be no present controversy as such process has long been judicially approved in this state. *Commonwealth v. O'Harrah*, Ky., 262 S.W.2d 385 (1953). Likewise, had Patricia simply brought this action in her own behalf following the child's majority we might simply adopt *Fox, supra,* as a readily available solution to the present dilemma. However, we reach neither of those questions as this appeal presents a distinct and more unusual problem due to its novel fact situation as much as the novel question of law it raises. The initial judgment of contempt, entered September 14, 1982, and the agreed order conditionally purging Leslie of contempt were both undisputedly entered during the child's minority. Whether this coincidence entitles Patricia and the trial court to subject Leslie to the continuing possibility of incarceration for contempt is issue which lies at the core of this dispute.

This dilemma has been nicely summarized by one of the leading scholars in the field of remedies. He comments,

The distinction between obligations classed as "debts" and obligations not so classed sometimes leads to difficult problems not necessarily capable of rational solution. For instance, there is the problem of the consent decree, in which the parties agree that a court shall enter such and such an order for, say, alimony. Is this a contract with the result that the obligation under it is a debt and not collectible through contempt proceedings? Or is it an obligation imposed by law, with the result that the obligation is something other than debt and fully collectible in contempt proceedings? Even judges who would not argue about how many angels can dwell on the point of a needle will argue about such things. It will surprise no one to learn that the cases are not harmonious.

D. Dobbs, *Remedies*, Section 2.9 at 99 (1973) (citing *Scheldrup v. Gaffney*, 243 Iowa 1297, 55 N.W.2d 272 (1952); *Holden v. Holden*, 245 N.C. 1, 95 S.E.2d 118 (1956)).

After due consideration, we conclude that Leslie's obligation under the agreed order of November 3, 1982, is one imposed by law, and thus is something other than a simple contractual debt. The basis for his conditional release in 1982 was the order of the trial court, absent which, Leslie was subject to extended imprisonment for his repeated refusals to honor the 1968 judgment. His agreement to make periodic repayment of the $14,390 arrearage, in and of itself, was insufficient to bring about his release. Only following judicial endorsement of the agreement by court order was Leslie conditionally purged of contempt. Therefore, it is the order of the Hardin Circuit Court and not simply the parties' agreement which is the significant element in determining the extent of the trial court's contempt powers.

Those powers have repeatedly been held to encompass punishment for "failure to do something ordered to be done by a

court in a civil action for benefit of an opposing party therein." *Akins v. Peak*, 239 Ky. 847, 40 S.W.2d 324 (1931). Indeed, they are often described as "an essential element of judicial authority." *Casteel v. Sparks*, 312 Ky. 99, 226 S.W.2d 533 (1950). By his most recent refusal to make payments, Leslie violated not only the terms of his agreement with Patricia, but the court order affecting his conditional release. Given Leslie's primary duty to obey that order, *Kindt v. Murphy*, 312 Ky. 395, 227 S.W.2d 895 (1950), the circuit court was well within its authority in ordering Leslie's arrest, and would continue to be so assuming Leslie continues to refuse to obey the 1982 order.

We need not discuss *Fox, supra,* in reaching our conclusion. While *Fox, supra,* is well written, and would seem, with slight modification, to enunciate sound judicial policy, we simply are not faced with the same problem as that court. The present action did not arise from a suit for child support arrearages brought by a custodial parent as a real party in interest after the minor child had reached its majority. Were that the case, we might be inclined to hold that the trial court's power of contempt to enforce payment of arrearages in child support terminates within a reasonable time (presumably one month, the usual payment period in child support cases) after the child to be supported reaches its majority. Here, however, the trial court's power of contempt arises from its order of 1982, rendered during the child's minority to *conditionally* purge Leslie of contempt. This being the case, the Hardin Circuit Court may continue to imprison Leslie until he fully complies with its order of November, 1982.

The judgment of the Hardin Circuit Court is affirmed.

Further, pursuant to 2.(a) of the Order Designating the case as a Special Appeal, the application of CR 76.20 and CR 76.32, as well as other appropriate Rules of Civil Procedure pertaining to further appellate steps, are reinstated effective the date of this opinion.

All concur.